## DECLARATION OF DEAN FULLERTON

I, Dean Fullerton, declare and state as follows:

I am the Human Resource Director at U.S. Well Services, LLC ("USWS") and have held this position at USWS since February 29, 2014. I am personally acquainted with the facts contained in this Declaration, they are based on my personal knowledge, and they are true and correct.

1. USWS provides high-pressure, hydraulic fracturing services in unconventional oil and natural gas basins, specifically in the Marcellus and Utica shale regions.

2. USWS's employees are often required to travel to, and work at, remote client well sites in Ohio, West Virginia, and Pennsylvania (i.e. "in the field"). Plaintiffs and any similarly situated hourly workers performed labor-intensive, physically demanding jobs outside at these remote well sites. While performing their job duties, they were exposed to harsh elements, including below freezing temperatures in the winter and heat in the summer.

3. The employees often worked more than 12 hours in a single day. They met at their home shop location and were transported by USWS to the client's well site to perform their job duties. If the well site was far enough away to make traveling back to the home shop location each day impracticable, the employees were transported to hotels to stay in during their work on the project. Due to the remote well locations, there were typically no shops or restaurants nearby for the employees to purchase food or drinks, and they did not drive their personal vehicles to the well sites. No food or beverages—except for water—was generally provided to USWS's employees at the well sites. It was each employee's responsibility to bring food and beverages sufficient to nourish and sustain them throughout the long day.

4. Remaining sufficiently nourished and hydrated was important to allow the employees to safely perform their physically demanding jobs. Employees sometimes purchased food on the way to the shop before being transported to the well site, or the USWS vehicle would stop at a gas station or other place to allow the employees to purchase beverages and food on the way to the well site. Sometimes employees purchased food and drinks in advance and then took the food and beverages from home to the well site, if they were not staying in hotels between their shifts.

5. Once the employees arrived at the remote well site, they did not have any opportunities to purchase additional food or beverages. Therefore, USWS instituted a per diem policy to reimburse employees for the cost of bringing their own food and drinks to the remote well sites, and to encourage employees to eat and drink while working in the field. The per diems applied only when the employees were working in the field and not when they were working in the home or shop locations. Exhibit A-1 is a true and correct copy of Plaintiff Jeff Lackie's Time and Per Diem Report for the weeks ending December 12 and 20, 2014. Exhibit A-1 demonstrates that Lackie only received per diems while working in the field and that he did not receive per diems when he worked in the shop. The per diems were not an across-the-board benefit, but rather were provided on a limited basis to employees when they were working in remote locations. The employees traveled to the remote work sites solely to perform work for

EXHIBIT A

USWS and the per diems allowed USWS to avoid providing additional services at the remote sites. USWS's per diem policy provided that eligible employees would receive up to $40 per day to cover meal and other incidental expenses incurred while working at the remote well sites. The intent of the per diem policy was to compensate and reimburse employees for the cost of bringing their own food and drinks to the field, in part, because employees may be required to expend more on food, snacks, and drinks than if they were working in the shop or otherwise working in town.

6. The USWS employees that worked in the field regularly ate meals or snacks and hydrated every four hours or whenever the rig's operations allowed them to take a break between stages in the job. Thus, the per diem was paid in $10 increments for every four hours worked in the field, up to a maximum of $40 per day. The amount received in per diem pay reasonably approximated the amount of the expenses that the employee incurred in purchasing meals and drinks depending on the amount of time they spent working in the field. The per diems were never paid on an hourly basis; instead, USWS increased per diems incrementally based on the amount of time employees spent in the field.

7. Although most employees worked 12 or more hours a day in the field, sometimes employees spent only part of the day in the field. For example, a van driver may only spend a few hours away from the shop transporting employees to the well site. Or, a mechanic might be called to the well site for a limited period of time to fix a piece of equipment. Alternatively, there may be issues with the well site that unexpectedly shut down USWS's operations midday. Therefore, by increasing the per diems incrementally throughout the day, the per diems reasonably approximated the amount of money USWS expected the employee to spend on food and drinks during their time in the field. Otherwise, an employee who worked in the field for a few hours and an employee who worked in the field for sixteen hours would receive the same per diem payment, which makes no sense particularly in light of the standard requiring that per diem payments are to reimburse employees for their expenses incurred while working in the field.

8. USWS computes its per diem expenses in four hour increments, a basis "similar to wages" (although not an hourly payment), and specifically identifies the amount of the per diem allowance as $10 for each of these four hour increments, up to a maximum of $40. The payment of per diems in these incremental time periods is not unique to USWS or uncommon in the industry.

9. On average, when working in the field, USWS's hourly employees earned approximately $1,340 in regular earnings (before overtime) and $230 in per diems every two weeks. Thus, USWS's per diems were not disproportionally large in comparison to the employee's regular rate of pay.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on December 27, 2016 in Houston, Texas.

_____
Dean Fullerton

2

5964826v2